UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

**BRIAN MINION**                                                                 **PLAINTIFF**

**v.**                                                 **CIVIL ACTION NO. 4:19-CV-P95-JHM**

**RN LINDSEY et al.**                                                      **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

Before the Court is the motion for summary judgment (DN 22) filed by the remaining Defendants in this action, Southern Health Partners (SHP) and Lindsey Ridings.[1]  Plaintiff Brian Minion has responded (DN 40).  The matter being ripe, the Court will grant the motion for summary judgment for the following reasons.

## I. PRELIMINARY MATTERS

Before addressing the motion for summary judgment, the Court considers three preliminary matters:  Plaintiff's motion to amend (DN 27) and motion to extend the time to respond to the summary-judgment motion (DN 39) and Defendants' motion to join (DN 29) Henderson County's response to the motion to amend.  Each will be considered below.

*A. DN 29*

In response to Plaintiff's motion to amend, Defendants move to join, adopt, and incorporate by reference (DN 29) Defendant Henderson County's response (DN 28) to Plaintiff's motion.  The Court **GRANTS** Defendants' motion (DN 29).

*B. DN 27*

In Plaintiff's motion to amend (DN 27), he seeks to add a claim of malpractice and gross negligence on Defendant Ridings.  Plaintiff initiated this action in July 2019.  The Scheduling

---

[1] The other Defendants named in the suit have been dismissed either on initial review, *i.e.*, Dr. McCoy and Amy Brady, *see* DN 5, or, in the case of Defendant Henderson County by grant of summary judgment, *see* DN 34.

Order (DN 6) in this case provided that discovery was due by January 17, 2020, and dispositive motions were due by March 17, 2020.  The motion to amend (DN 27) was filed April 6, 2020, after Defendants SHP and Ridings filed their motion for summary judgment.

Federal Rule of Civil Procedure 15(a)(2) provides that a Court "should freely give leave [to amend] when justice so requires."  A motion to amend may be denied where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 521 (6th Cir. 2010).

Where an "amendment is sought at a late stage in the litigation, there is an increased burden to show justification for failing to move earlier." *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 459 (6th Cir. 2001).  Failure to plead an available claim in a timely manner deprives an opposing party of "notice that it would have to defend" against the new claim.  *Id*.  Courts are especially inclined to deny a motion brought under Rule 15 "if the moving party knew the facts on which the claim or defense sought to be added were based at the time the original pleading was filed and there is no excuse for his failure to plead them at that time."  6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1487 (3d ed.); *see Wade*, 259 F.3d at 459 (finding undue delay where plaintiff knew the facts forming the basis of the amended claims but failed to plead them in the original complaint).

Courts will deny leave to amend where there is "some significant showing of prejudice to the opponent." *Moore v. City of Paducah*, 790 F.2d 557, 562 (6th Cir. 1986).  An amendment to a complaint prejudices a party where the amendment will require that party to prepare an

additional defense strategy and expend additional resources to defend against new claims.  *See Troxel Mfg. Co. v. Schwinn Bicycle Co.*, 489 F.2d 968, 971 (6th Cir. 1973).

Here, Plaintiff knew of the proposed malpractice or negligence claim when he filed his complaint, and there was no reason not to plead the claim at that time.  Additionally, the Court finds that amendment would be prejudicial to Defendants because the amendment would require an additional defense strategy and would therefore require Defendants to expend additional resources to defend against these claims.  Moreover, as will be set forth below, the Court will grant the summary judgment motion as to the remaining federal claims against these Defendants, and under 28 U.S.C. § 1367, district courts may decline to exercise supplemental jurisdiction over state-law claims when all claims over which it had original jurisdiction have been dismissed.  Consequently, the Court will not allow amendment of this claim.

Plaintiff also wants to amend to add a "municipality" claim on SHP for failing to do the following:  keep track of his weight; find a method to maintain his blood levels at a therapeutic level; pay attention to high-risk inmates; and get a better "PT-INR" monitor sooner.  However, Plaintiff does not allege that these failures were part of a custom or policy of SHP such that municipal liability applies.  As explained in the initial review, SHP cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.  *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Deaton v. Montgomery Cty., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993); *Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993).  Therefore, allowing amendment regarding these claims would be futile.  *See, e.g.*, *Watson v. S. Health Partners*, No. 3:18CV-P233-JHM, 2018 WL 4775507, at *3 (W.D. Ky. Oct. 3, 2018) (finding that where plaintiff did not allege that his harm was caused by a policy or custom of SHP, he failed to establish a basis

of liability against SHP and failed to state a cognizable § 1983 claim).  The Court will not allow amendment of this claim due to futility.

Plaintiff further alleges "SHP is negligent of progress notes that should've had more detail notes to show what his PT-INR level was this month on what was it other month before [and in other respects, such as keeping track of his weight]."  However, mere negligence is not sufficient to give rise to culpability under the Eighth Amendment.  *See, e.g.*, *Ribble v. Lucky*, 817 F. Supp. 653, 655 (E.D. Mich. 1993).  It would, thus, be futile to allow amendment of this claim.

Finally, Plaintiff asks for a medical examiner to be appointed.  He does not indicate under what rule he seeks a medical examiner, but the Court assumes it is Fed. R. Civ. P. 35.  Rule 35, however, does not vest the Court with authority to appoint an expert to examine a party seeking an examination of himself.  Instead, under appropriate circumstances, it allows the Court to order a party to submit to a physical examination at the request of an opposing party.  Additionally, Plaintiff does not indicate who would bear the cost.  Regardless, no civil litigant, even an indigent one, has a legal right to such aid.  *Smith v. Carroll*, 602 F. Supp. 2d 521, 526 (D. Del. 2009) (citing *Brown v. United States*, 74 F. App'x 611, 614 (7th Cir. 2003)).

For the foregoing reasons,

**IT IS ORDERED** that Plaintiff's motion (DN 27) is **DENIED**.

*C. DN 39*

Because Plaintiff did not initially file a response to the summary-judgment motion, the Court gave Plaintiff an additional 30 days in which to respond, provided him guidance in responding to a motion for summary judgment under Fed. R. Civ. P. 56, and warned him that failure to comply within the allotted time would result in dismissal of the action.  Plaintiff responded (DN 39) to the Court's Order with a letter explaining that he had only recently

received the Court's Order due to the COVID-19 pandemic and delays in the prison mail.  He also explained that a prison lockdown due to COVID had just been lifted and that he recently had COVID-19.  Since filing this letter Plaintiff has filed his response to the summary-judgment motion (DN 40).  The Court interprets the letter (DN 39) to be, in part, a motion to extend the time to respond to the motion for summary judgment.  The motion (DN 39) is **GRANTED**.

## II. SUMMARY-JUDGMENT MOTION

Plaintiff was a pretrial detainee at the Henderson County Detention Center (HCDC) when he initiated this *pro se*, *in forma pauperis* 42 U.S.C. § 1983 action.  On initial screening pursuant to 28 U.S.C. § 1915A, the Court allowed Plaintiff's Eighth Amendment deliberate-indifference-to-serious-medical-needs claims to continue against Defendant Ridings, a nurse, in her individual and official capacities and against SHP, the medical provider at HCDC.

The complaint's allegations pertinent to the instant summary-judgment motion were as follows.  Plaintiff alleged that before he arrived at HCDC he suffered a blood clot in his right groin and was taking warfarin, with his blood levels being checked every week.  He stated that when he came to HCDC he only saw the nurse one time and that he told the nurse that he took a stool softener and warfarin.  He stated that he put in many requests about medicine for "not having a bile movement."  He alleged that he noticed blood in his urine upon awakening on the morning of August 27, 2018.  He stated that at the 8-9:00 a.m. "pill call" he told the nurse and a guard that something was wrong, "then [he] got loud," and he was taken to a holding cell.  While there, he urinated in a candy bag so that he could show a guard the blood in his urine, which resulted in the guard alerting Defendant Ridings; forty-five minutes later he was taken to the nurse's station where Defendant Ridings "was on the phone with her boss" who told her to put Plaintiff in isolation and take blood.  Plaintiff stated that his blood was drawn and sent to the lab.

5

According to the complaint, the next day Defendant Ridings received a "red flag email" to send him to the hospital, which she did.  He asserted that at the hospital the doctor told him that he needed emergency surgery because he was suffering from a high dose of warfarin that was shutting down his kidneys and that the doctor why he had not been brought to the hospital earlier.

Plaintiff alleged that Defendants were notified of or saw his medical emergency and that he should not have been put in isolation instead of being provided emergency medical attention. The complaint also alleged that at some point after returning from the hospital to HCDC, he was put back on warfarin; that he again was not monitored; and that he again began to urinate blood. In particular, he states that the doctor "at Methodist Hospital didn't know I was back on warfarin and he stated in front of the federal coordinator to test my level once a week or once every other week.  [Defendant Ridings] stated that they suppose to check my blood level once a month taking 6.5 mg waffarain."

In their motion for summary judgment (DN 22), Defendants SHP and Ridings argue that they are entitled to summary judgment because they were not deliberately indifferent to Plaintiff's serious medical needs as follows.[2]

Defendants' recitation of the facts does not differ significantly from Plaintiff's complaint. They state that when Plaintiff entered HCDC on August 3, 2018, he was screened by a SHP nurse who completed the Admission Data/History and Physical Form on August 4, 2018.  At that time, Plaintiff reported a history of Bell's palsy and a left lower extremity deep vein thrombosis. Plaintiff was continued on his current medications, including the blood thinner warfarin.

Defendants further state that Plaintiff's August 27, 2018, sick-call slip complaining of not having a "bile movement" was not received by the SHP medical staff until August 29, 2018, and

---

[2] They also argue that they are entitled to qualified official immunity, but the Court does not reach this argument.

that Plaintiff was seen on August 30, 2018, at which time, non-party SHP nurse Jones entered a progress note indicating the Plaintiff "reported blood in urine and constipation x8 days." Defendant Ridings performed a urine dip test which showed blood in Plaintiff's urine. Nurse Jones noted that Plaintiff reported a history of prostate trouble and was taking warfarin and that she called medical director Dr. McCoy who ordered a "CBC" (presumably a complete blood count) and "PTI" (presumably a Prothrombin time test, a test to evaluate blood clotting).[3] Dr. McCoy instructed nurse Jones to send Plaintiff to the hospital if his levels were high. Plaintiff was also given Docusate Sodium twice a day for seven days to address his constipation. Nurse Ridings moved Plaintiff into a medical observation cell so that he could be monitored more closely by the jail and medical staff.

The next day, medical staff came to Plaintiff's medical observation cell to check his urine output. Plaintiff's urine was amber but without odor; Plaintiff reported tasting blood while eating and belching; and Plaintiff complained of chest pain and that his stomach was burning. His vital signs were taken and were within normal limits. Nurse Jones gave Plaintiff Geri Lanta and started him on Ranitidine twice a day for seven days for his stomach complaints.

On September 1, 2018, at 7:00 p.m., nurse Jones received a call from Garcia Laboratory and was informed that Plaintiff's PT, INR, and PTT results were very high.[4] Nurse Jones then contacted her nursing supervisors and was told to send Plaintiff to the ER immediately. Nurse Jones filled out the appropriate paperwork and coordinated Plaintiff's transfer to the ER with HCDC Lt. Antonio Prince, and Plaintiff was transported to the hospital immediately. He was admitted to Methodist Hospital from September 1 to September 5, 2018, undergoing a cystoscopy and stenting procedure, before being discharged back to HCDC. Defendants contend

---

[3] *See* medlineplus.gov.
[4] The international normalized ratio (INR) is calculated from a PT result and is used to monitor the blood-thinning medication (anticoagulant) warfarin. *See* medlineplus.gov.

that, upon discharge, neither Plaintiff's treating urologist, James Fellows, M.D., nor his treating hematologist, Arshad Husain, M.D., placed any orders regarding the frequency of blood testing needed.  They point to the fact that the discharge orders are silent in that regard.  Defendants explain that the hospital physicians temporarily changed Plaintiff's anticoagulant medications and advised him to follow up with his primary care physician.

On September 11, 2018, Nurse Ridings attempted to draw blood for a PT/INR and Plaintiff refused.  Plaintiff eventually allowed a PT/INR to be drawn on September 14, 2018. On September 20, 2018, Plaintiff left the facility to attend a follow-up appointment with his treating urologist, Dr. Fellows.  Dr. Fellows ordered that his stents be removed but made no order regarding the frequency of blood testing for his current medications.

Defendants assert that SHP medical staff at HCDC continued to provide Plaintiff with medical care throughout his incarceration at HCDC and that there was never a time that Plaintiff was denied care.

Defendants attach a SHP Admission Data Form dated August 4, 2018; a SHP physician's order sheet dated August 7, 2018, showing that Plaintiff was prescribed warfarin on August 7, 2018, and that he was prescribed Docusate Sodium for 7 days on August 30, 2018; Plaintiff's sick-call slip dated August 27, 2018; urine dip results dated August 30, 2018, stating that the color was red and the presence of blood was detected; SHP progress notes from August 4, 30, and 31, 2018; a medical isolation log dated August 30, 2018, explaining that the reason for medical isolation was blood in Plaintiff's urine; an isolation monitoring log from the same date; medical progress notes from September 1, 11, and 26 and October 2, 2018; a September 1, 2018, outside referral information form for evaluation and treatment stating: "large amounts of blood in his urine and mouth.  Labs were drawn (PT, INR, PTT).  Levels were very high.  IM is having

8

abdominal cramps."; incident report dated September 1, 2018, showing that Plaintiff was sent to

Methodist Hospital; a Methodist Hospital discharge form dated September 5, 2018; a

"prothrombin time/INR" form showing a collection date of September 14, 2018, and an out-of-

range result; and a progress note dated September 20, 2018, from Dr. Fellows.

In his response (DN 40) to the summary-judgment motion, Plaintiff asserts:

> The main point of this case is or was it justifiable putting me [in isolation] instead
> of sending me ER.  SHP staff had the right signs to send me to the ER but they
> disregard my health and my life not realizing the mistake and bad advice Dr.
> McCoy gave RN Lindsay Riddings to put me in [isolation].  I seen a inmate when
> I was there to go the ER with a bump on his head.  So, why I didn't go to the ER?

Plaintiff also asserts:

> I only seen Dr. McCoy one time when I was there.  I never found out who was
> making the medical plans for my medical issues.  But, right before I was
> leaving[5] the male doctor that took Dr. McCoy's position said if it [presumably
> Plaintiff's blood clot] don't go down soon that he was going to recommend a
> medical technique called a clot buster.  So, why didn't SHP staff didn't
> recommend the same thing in 2018-2019 when they find out that the clot didn't
> disappear?

In response to Defendants' assertion that neither Drs. Fellows nor Husein required

monitoring of his PT-INR, Plaintiff asserts that the reason they did not recommend monitoring is

because they did not know that he was "put back on warfarin.  If they knew at that time they

would have done so."

Plaintiff takes issue with Defendants' description of his urine being amber.  He states, "8-

30-18 progress note's stating that I had high concentration of blood in my urine.  That mean it

wasn't a normal color of urine, not amber in color."  Plaintiff also takes issue with some minor

points of Defendant's motion, such as asserting that Lt. Prince did not escort him to the ER.

Plaintiff also points out how some things are done differently at FCI Butner where he is currently

---

[5] Plaintiff notified the Court that he was in transit within the federal prison system in August 2020.  DN 32.

incarcerated; for example, he states: "Butner FMC PT-INR they check frequently, not once a month."

Among the records attached to Plaintiff's response are recent medical records from FCI Butner.  He also attaches some of the same documents used by Defendants as exhibits, with added highlighting and handwritten notes.

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The moving party's burden may be discharged by demonstrating that there is an absence of evidence to support an essential element of the nonmoving party's case for which he or she has the burden of proof.  *Id.*  Once the moving party demonstrates this lack of evidence, the burden passes to the nonmoving party to establish, after an adequate opportunity for discovery, the existence of a disputed factual element essential to his case with respect to which he bears the burden of proof.  *Id*.  If the record taken as a whole could not lead the trier of fact to find for the nonmoving party, the motion for summary judgment should be granted.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In his response (DN 40), Plaintiff states that he requests all the documents in this case because he was not allowed to bring legal documents "in federal transit."  Additionally, in the motion to amend discussed above, Plaintiff objects to summary judgment for Defendants Ridings and SHP because, he alleges, HCDC did not send all the evidence on "me and Lindsey convo."

The Court first considers Plaintiff's statements that he does not have certain documents or evidence.  The summary-judgment rule provides:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1) defer considering the motion or deny it;
>
> (2) allow time to obtain affidavits or declarations or to take discovery; or
>
> (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d).  Here, although Plaintiff states that he wants all of the documents filed in this case and that certain documents were not provided to him, he has not "shown by affidavit or declaration that for, specified reasons, [he] cannot present facts essential to justify [his] opposition."  Thus, the Court finds that it need not delay consideration of the motion for summary judgment because Plaintiff has not shown specific reasons why he cannot present facts essential to justify his opposition to the summary-judgment motion.

Turning to the merits of the summary-judgment motion, an Eighth Amendment claim consists of both an objective and subjective component.  *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Flanory v. Bonn*, 604 F.3d 249, 253 (6th Cir. 2010).  The objective component requires that the medical need be sufficiently serious.  *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Hunt v. Reynolds*, 974 F.2d 734, 735 (6th Cir. 1992).  This component is contextually driven and is responsive to "contemporary standards of decency."  *Hudson*, 503 U.S. at 8 (internal quotation marks omitted) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).  The subjective component requires that the official's conduct be deliberately indifferent to Plaintiff's needs.  *See Farmer*, 511 U.S. at 834 (citing *Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991); *Hudson*, 503 U.S. at 5; *Estelle*, 429 U.S. at 106); *Hunt*, 974 F.2d at 735 (citations omitted).  Deliberate indifference is a "state of mind more blameworthy than negligence."  *Farmer*, 511 U.S. at 835 (citation omitted).

Not every claim of inadequate medical treatment states an Eighth Amendment violation. *See Estelle*, 429 U.S. at 105.  Neither negligent medical care nor delay in medical care constitutes a constitutional violation without deliberate indifference resulting in substantial harm. *See Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993); *Acord v. Brown*, No. 93-2083, 1994 WL 679365, at *2 (6th Cir. Dec. 5, 1994) ("Accidents, mistakes, negligence and medical malpractice are not constitutional violations merely because the victim is a prisoner." (citing *Estelle*, 429 U.S. at 106)).  "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976).

Furthermore, a difference of opinion between the inmate and a prison medical official concerning diagnosis or treatment does not constitute a constitutional violation.  *See Estelle*, 429 U.S. at 107 ("[T]he question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment.  A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment."); *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989) ("At most, Sanchez has raised a difference of medical opinion regarding his treatment.  A difference of opinion does not amount to a deliberate indifference to Sanchez' serious medical needs." (citation omitted)).

Here, the undisputed facts show that when Plaintiff complained of blood in his urine, his urine was tested, the presence of blood was confirmed, blood was drawn and sent to the laboratory for testing, and Plaintiff was placed in a medical observation cell where he was monitored.  He was also given medicine for his constipation and stomach pain.  When the laboratory called with the test results, Plaintiff was immediately transferred to the hospital.  After

12

discharge from the hospital, Defendants did a PT/INR test and transported Plaintiff to a follow-up visit with his treating urologist.

Plaintiff clearly disagrees with the decision to put him in a medical observation cell while awaiting the results of his blood tests rather than sending him to the hospital right away.  He also disagrees with the way and the frequency with which his blood levels were monitored.   And Plaintiff questions why SHP did not recommend a "clot buster" in 2018-2019, since the doctor who replaced Dr. McCoy indicated that he would recommend that technique if his blood clot did not resolve.  But Plaintiff's disagreement with the medical decisions made by Defendants does not rise to the level of a constitutional violation.  *Smith v. Sator*, 102 F. App'x 907, 909 (6th Cir. 2004) ("Differences of opinion between a plaintiff and his doctor regarding his diagnosis and treatment do not state an Eighth Amendment claim." (citing *Estelle*, 429 U.S. at 107; *Westlake v. Lucas*, 537 F.2d at 860 n.5); *Carr v. Parker*, 205 F.3d 1339 (6th Cir. 1999) ("[A] difference of opinion between a prisoner and a doctor over diagnosis or treatment also fails to state an Eighth Amendment claim of deliberate indifference to a serious medical need.").

Nor do Plaintiff's assertions that his medical care is being handled differently by the federal facility where he is now incarcerated show deliberate indifference.  Even a difference of opinion between doctors does not rise to the level of a constitutional violation.  *Lane v. Wexford Health Sources (Contreator)*, 510 F. App'x 385, 388 (6th Cir. 2013) (per curiam) (holding that disagreements between two prison doctors do not show deliberate indifference but "suggest, at most, a difference in medical opinion, which is not actionable under § 1983"); *Chapman v. Parke*, 946 F.2d 894 (6th Cir. 1991) ("[A] difference of opinion [between prisoner and doctors or among the medical staff] regarding treatment or . . .  need for surgery is insufficient to state a claim under the Eighth Amendment."); *Haynes v. Ivens*, No. 08-CV-13091-DT, 2010 WL

420030, at *8 (E.D. Mich. Jan. 27, 2010) ("Plaintiff has done nothing more than allege a reasonable difference of medical opinion between two doctors, upon which his claim cannot proceed.").  Consequently, the Court finds that Defendants have shown that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law.

For the foregoing reasons, and being otherwise sufficiently advised,

**IT IS ORDERED** that the motion for summary judgment filed by Defendants SHP and Ridings (DN 22) is **GRANTED**.

The Court will enter a separate Judgment in this action.

Date:   March 30, 2021

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc:     Plaintiff, *pro se*
        Counsel of record
4414.009

14